UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



**FILED**

MAR 2 1 2014

CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| RYAN C. ZENS and ASHLEY A. ZENS, | CIV 11-1023 |
| Plaintiffs, | |
| -vs- | OPINION AND ORDER ON MOTIONS TO EXCLUDE EXPERTS |
| SLATKIN & CO., INC., BATH & BODY WORKS LLC, and BATH & BODY WORKS LLC d/b/a THE WHITE BARN CANDLE CO., | |
| Defendants and Third Party Plaintiffs, | |
| -vs- | |
| AERON LIFESTYLE TECHNOLOGY, INC., | |
| Third Party Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Plaintiffs instituted this diversity action seeking damages arising out of a fire in their Redfield, South Dakota, home which plaintiffs claim was caused by a Wallflower plug-in fragrance diffuser which they purchased from Bath and Body Works. Plaintiffs claim defendants are liable for negligence, failure to warn, strict liability, and breach of warranties. Defendants filed a third party complaint against the manufacturer, Aeron Lifestyle Technology, seeking contribution and indemnity.

Plaintiffs have filed a motion to exclude two of defendants' designated experts pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The third party defendant filed a motion to exclude one of plaintiffs' experts on the same basis.

The fire at issue occurred on August 30, 2008. A number of investigations and reports soon followed. The Redfield Fire Department issued a report. The fire was also investigated by Larry Creighton of Advanced Investigative Services ("AIS") and he issued a report. Dennis

Smith from Kodiak Fire & Safety Consulting of Ft. Wayne, Indiana, was retained to examine the fire scene and issued a report. Cowan Engineering and Consulting took photographs of the fire scene and issued a report. Nathan Taarud, an American Family Insurance adjuster also took pictures of the fire scene. A number of items were recovered from the fire scene by the several investigators, including a duplex receptacle (an electrical outlet), the remains of a Wallflower fragrance diffuser from the area of origin of the fire, and a Wallflower fragrance diffuser that was purchased at the same time and used in another room.

The artifacts collected from the fire scene were sent to Anderson Engineering of New Prague, Inc. in July 2012. A joint examination by Beth Anderson, plaintiffs' forensic electrical engineering expert, and Larry Hanke of Materials Evaluation and Engineering, Inc. ("MEE") was conducted in October 2012.

Anderson opines that the Wallflower unit had defective insulation on the inside wiring, allowing electrical arcing and a resulting fire. She concludes this based upon her observation of the unit. She claims the unit shows the presence of "demarcation," a sharp line between melted and unmelted copper wires. She claims the scientific community considers demarcation a sign of internal arcing, as opposed to damage caused by heat resulting from fire external to the unit. She bases her opinion, in part, upon the NFPA 921 Guide for Fire and Explosion Investigations.

Scientific Expert Analysis ("S.E.A.") of Columbus, Ohio, was retained by defendants to review the results of evidence examinations and review and analyze the various reports. The investigation was assigned to Robert Carbonara, a materials scientist. He reviewed the reports from Anderson Engineering, MEE, and AIS. He examined exemplar Wallflower units and outlets but did not examine the actual unit and outlet from the fire.

Daniel Churchward, a forensic fire investigator and owner of Kodiak, was retained by defendants. He conducted an examination of artifacts removed from the fire scene and held at Anderson Engineering's laboratory in Minnesota. Churchward and James Small conducted research and testing on exemplar Aeron air fresheners at the SEA laboratory in Columbus, Ohio, and at Kodiak's laboratory. Churchward reviewed reports from an on-site investigation conducted by his employee, Dennis Smith, as well as reports by Larry Creighton from AIS, Larry Hanke from MEE, and from Anderson Engineering.

Carbonara opines that there was no arcing in the Wallflower unit which allegedly caused the fire. He contends that Anderson's conclusion that demarcation is present and is evidence of arcing is based upon old science and is no longer accepted in the scientific community. Both Carbonara and Churchward opine that there must have been external damage to the unit's plug or the outlet caused by moving furniture or some other significant external force and that applied force was the cause of the fire. They base this opinion, in part, upon wall damage present near the outlet. Any melting of the wires internally to the Wallflower unit, they contend, was the result of an external fire.

Plaintiffs contend that Carbonara's opinions are unreliable because he does not accept that a sharp line of demarcation is proof of an electrical arcing event which, plaintiffs contend, renders his scientific methodology unreliable because it has no basis in scientific fact. Plaintiffs contend that neither of defendants' experts conducted any testing on the unit in question, and contend that such experts base their opinions as to the cause of the fire on speculation that the unit was damaged. Defendants counter that Anderson's opinion is unreliable because it is based upon an NFPA guideline which will soon be revised.

## DECISION

Pursuant to Fed. R. Evid. 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The district judge conducts an initial inquiry as part of its "gatekeeping" obligation to determine whether the proffered testimony is "scientific, technical, or other specialized knowledge" and whether the evidence will "assist the trier of fact to understand the evidence or to determine a fact in issue." Daubert, 509 U.S. at 590-91, 113 S.Ct. at 2795. Thus, the district court must determine whether the "scientific testimony or evidence is not only relevant, but reliable." Vasquez v. Colores, 648 F.3d 648, 653 (8th Cir. 2011). Put another way, the district

3

court must determine whether "the expert's methodology is reliable and can be reasonably applied to the facts of the case." David E. Watson, P.C. v. United States, 668 F.3d 1008, 1015 (8th Cir. 2012). The gatekeeping function serves "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kuhn v. Wyeth , Inc., 686 F.3d 618, 625 (8th Cir. 2012) (*quoting* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "[T]he court's inquiry is intended to be flexible." Scroggin v. Wyeth, 586 F.3d 547, 565 (8th Cir. 2009).

> To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.

Khoury v. Phillips Medical Systems, 614 F.3d 888, 892 (8th Cir. 2010) (internal quotations and citations omitted).

Third party defendants contend that plaintiffs' expert's opinion should be excluded for the same reason that her opinion was excluded in Fireman's Fund Ins. Co. v. Canon USA, Inc., 394 F.3d 1054 (8th Cir. 2004). In Fireman's Fund, the Eighth Circuit held that the "opinion of a qualified expert witness is admissible if (1) it is based upon sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has applied the principles and methods reliably to the facts of the case." Fireman's Fund v. Canon, 394 F.3d at 1057. In Fireman's Fund, Anderson's opinion was excluded because she did not apply the National Fire Protection Association ("NFPA") Standard 921 reliably to the facts of the case. Fireman's Fund, 394 F.3d at 1057-58. In other words, she did not reconcile her theory of the fire's origin based upon testing of exemplar copiers with empirical data obtained from the fire scene and appropriate testing of the actual copier involved in the fire. Fireman's Fund v. Canon, 394 F.3d at 1059. Of course, that finding was fact specific to Anderson's work in that case.

In Russell v. Whirlpool Corp., the Eighth Circuit noted that, while Fireman's Fund held that NFPA 921 qualifies as "a reliable method endorsed by professional organizations," "we have not held NFPA 921 is the *only* reliable way to investigate a fire. Our NFPA 921 cases stand for

4

the simple proposition an expert who purports to follow NFPA 921 must apply its contents reliably." Russell v. Whirlpool Corp., 702 F.3d at 455.

"In the context of fire investigations, we have held expert opinions formed on the basis of observations and experience may meet this reliability threshold." Russell v. Whirlpool Corp., 702 F.3d 450, 457 (8th Cir. 2012) (*citing* Shuck v. CNH America, 498 F.3d 868, 875 (8th Cir. 2007) and Hickerson v. Pride Mobility Prods. Corp., 470 F.3d 1252, 1257 (8th Cir. 2006)).  The parties in Shuck argued the experts' testimony was not based on a reliable methodology because they did not test damaged combine parts, exemplar combine parts, or oil from the combine.  The Eighth Circuit held in Shuck that failure to test the unit in question" did not necessarily render the experts' methodology flawed nor opinions inadmissible." Shuck v. CNH America, Inc., 498 F.3d at 874.  Rather, the Eighth Circuit held that the experts used reliable methods when they "observed the relevant evidence, applied their specialized knowledge, and systematically included or excluded possible theories of causation." Shuck v. CNH America, Inc., 498 F.3d at 875.

In Hickerson, the defendant challenged the plaintiff's expert's conclusion that a motorized power scooter caused a house fire, claiming it was too speculative because the expert failed to eliminate other potential ignition sources.  The Eighth Circuit found "nothing unreliable" in the expert's methodology, in which he considered burn patterns, identified a point of origin, and eliminated as many alternative causes of the fire as possible.  Hickerson, 470 F.3d at 1257.

The Eighth Circuit held that "[w]e have found reliability in these cases [Shuck and Hickerson] without insisting upon rigid adherence to the Daubert factors.  As our prior case law instructs, we have reached these conclusions by examining the facts of each individual case, considering the Daubert factors to the extent they fit the facts." Russell v. Whirlpool Corp., 702 F.3 at 457.

I find that the opinions of Anderson, Carbonara, and Churchward are sufficiently reliable to go to the jury.  Each expert bases his or her opinion on accepted methodology.  I reject the contention that Anderson's opinions are based upon a scientific standard that will be rejected in a future publication.  I reject plaintiffs' contention that the defendants' experts' opinions are based upon speculation about damage to the outlet or Wallflower unit.  They noted there was damage to

5

the wall near the outlet that appeared to have occurred prior to the fire and claimed to have eliminated any other cause of the fire.

Historically, district courts have reviewed expert testimony to determine whether it is based upon generally accepted scientific principles or is instead "junk science." The judge's role in analyzing Rule 702 and Daubert "is to prevent juries from being swayed by dubious scientific testimony." Russell v. Whirlpool Corp., 702 F.3d at 456. *Accord*, In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 613 (8th Cir. 2011) ( "The main purpose of Daubert exclusion is to prevent juries from being swayed by dubious scientific testimony"). No expert in this case has employed "dubious" scientific reasoning. That the opinions are subject to attack as being contrary to other expert's opinions and being inconsistent with other facts are matters for the jury. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Russell v. Whirlpool Corp., 702 F.3d at 458 (*quoting* Daubert, 509 U.S. at 596, 113 S.Ct. 2786).

Now, therefore,

IT IS ORDERED:

1. Plaintiffs' motion, Doc. 40, to exclude defendants' experts is denied.

2. Third party defendant's motion, Doc. 46, to exclude an expert is denied.

Dated this 18 day of March, 2014.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)                DEPUTY

6